IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MELISSA HENDERSON and
DANA JONES                                                                    PLAINTIFFS

V.                              CASE NO. 5:11-CV-05253

GLOBALLAB SOLUTIONS, INC. and
TYLER FREEMAN, MD                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is Defendants GlobalLab Solutions, Inc. and Tyler Freeman, MD's (collectively, "GlobalLab") Motion for Judgment as a Matter of Law, New Trial, or Remittitur (Doc. 143), to which Plaintiffs Melissa Henderson and Dana Jones submitted a Response in Opposition (Doc. 145), and GlobalLab filed a Reply (Doc. 147). For the reasons explained herein, GlobalLab's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Plaintiffs Melissa Henderson and Dana Jones filed a Complaint in October of 2011 in the Circuit Court of Washington County, Arkansas, alleging they were terminated from their jobs as drug counselors for the Washington/Madison County Drug Court due to GlobalLab's negligence in erroneously reporting that they had tested positive for illegal drugs, specifically MDMA, or "ecstasy," during a random drug screen. The case was removed to this Court and went to trial for the first time on January 13, 2014. That trial resulted in a hung jury, and the case was reset. The second trial

commenced on November 12, 2014. After three days of testimony and argument, the jury delivered a verdict in favor of Plaintiffs.[1]

In delivering its verdict, the jury answered five separate interrogatories on topics ranging from liability to damages. See Doc. 126. As part of its deliberations, the jury was called upon to determine the existence of any comparative fault as apportioned among Plaintiffs, GlobalLab, and another tortfeasor, Concentra Laboratories, LLC, that had settled with Plaintiffs prior to trial. On the issue of liability, the jury determined that GlobalLab was 100% liable to Plaintiffs for negligence. As to the calculation of damages, the jury found that Henderson should receive $775,000.00 in compensatory damages, and Jones should receive $770,000.00. The Court entered judgment consistent with the jury's findings on November 21, 2014. See Doc. 133.

On December 3, 2014, GlobalLab moved to stay the execution of the judgment pending the Court's decision on anticipated post-trial motions. The Court granted GlobalLab's Motion to Stay, and on December 17, 2014, GlobalLab posted a $1,550,000.00 Supersedeas Bond as collateral for the judgment. The following day, December 18, 2014, GlobalLab filed its Motion for Judgment as a Matter of Law, New Trial, or Remittitur (Doc. 143), which is now ripe for decision.[2]

---

[1] The Honorable Jimm Larry Hendren presided over both the first and second trials of this matter.

[2] Judge Hendren took inactive senior status effective January 1, 2015. The case was subsequently reassigned to the undersigned. In considering the post-trial motions, I have thoroughly reviewed the record, including the complete transcript (Doc. 149) of the second trial.

GlobalLab seeks relief from the jury's verdict either through Federal Rule of Civil Procedure 50(b) or 59(a). GlobalLab's Rule 50(b) request is that the jury's verdict be set aside and judgment as a matter of law enter in GlobalLab's favor, based on GlobalLab's contention that the jury lacked a legally sufficient evidentiary basis for finding it liable for negligence. In the alternative, GlobalLab offers two arguments in support of its Rule 59(a) motion for a new trial. First, GlobalLab maintains that the jury's liability verdict was against the weight of the evidence, and, therefore, allowing the verdict to stand would result in a miscarriage of justice. Second, GlobalLab argues that the jury's calculation of damages was not supported by law, as the jury disregarded the evidence relating to Plaintiffs' failure to mitigate damages, and the issue of mental anguish damages should never have been submitted to the jury, as Plaintiffs failed to establish at trial that they suffered physical injuries that were separate and apart from the physical effects of mental anguish. In the alternative to a new trial, GlobalLab requests a remittitur of the damages award.

## II. LEGAL STANDARDS

### A. Rule 50(b) Motion for Judgment as a Matter of Law

In reviewing the Rule 50(a) motion, the Court must view all of the facts and reasonable inferences derived from those facts in the light most favorable to Plaintiffs, and then determine whether there is sufficient evidence to support the jury's verdict in Plaintiffs' favor. In performing this analysis, the Court must "assume that the jury resolved all conflicts of evidence in favor of the nonmoving party, assume as true all facts which the prevailing party's evidence tended to prove . . . and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be

drawn from the evidence. A jury verdict will not be set aside unless there is a complete absence of probative facts to support the verdict." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003).

"By definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 794 (8th Cir. 2003) (citing Fed. R. Civ. P. 50(b)); *see also Conseco Fin. Servicing Corp. v. N. Am. Mortgage, Co.*, 381 F.3d 811, 821 (8th Cir.2004) ("The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion."). According to Rule 50(a)(2), a motion for judgment as a matter of law must "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Although a post-trial motion for judgment as a matter of law may not raise additional grounds that the party did not raise in a pre-verdict motion, "the grounds are considered to be sufficiently raised if the district court and the nonmoving party are apprised of the basis for the motion," and "technical precision in stating the grounds for the motion is not necessary." *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 878 n.5 (8th Cir. 2005).

### B. Rule 59(a) Motion for a New Trial or for Remittitur

"Federal Rule of Civil Procedure 59 confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict. A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996) (internal

citation omitted). The Court, in its discretion, may grant a partial new trial on some of the issues, but not on others. Fed. R. Civ. P. 59(a)(1) ("The court may, on motion, grant a new trial on all or some of the issues . . . ."); see, e.g., Hallberg v. Brasher, 679 F.2d 751, 758 (8th Cir. 1982) (remanding for new trial on issue of damages alone, as damages were not so interwoven with liability so as to necessitate a trial on both).

"The Court may conditionally grant a motion for new trial but allow plaintiff to avoid a new trial if plaintiff agrees to remit an amount of damages as determined by the Court." Shepard v. Wapello Cnty., Iowa, 303 F. Supp. 2d 1004, 1024 (S.D. Iowa 2003) (citing Hetzel v. Prince William Cnty., Va., 523 U.S. 208, 211 (1998); Donovan v. Penn Shipping Co., 429 U.S. 648, 648–49 (1977); Thorne v. Wells Inv., Inc., 197 F.3d 1205, 1212 (8th Cir. 1999)). "In fixing the remittitur amount, due regard for the Seventh Amendment right to jury trial requires that 'remittitur to the maximum amount proved' be the standard." Shepard, 303 F. Supp. 2d at 1024-25 (quoting In re Knickerbocker, 827 F.2d 281, 289 n.6 (8th Cir.1987)). It is within the discretion of the court to fix the amount of remittitur and then compel the plaintiff or plaintiffs to choose between accepting a reduction in the award or submitting to a new trial. 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2815 at 221-22 (3d ed. 2012) ("A remittitur gives the plaintiff a choice. The plaintiff can refuse to accept the reduced amount of damages and instead proceed to a new trial.").

### III. DISCUSSION

#### A. Rule 50(b) Motion for Judgment as a Matter of Law

At trial, GlobalLab made a motion pursuant to Rule 50(a) at the close of Plaintiffs' case and renewed this motion at the close of all evidence, as follows:

> [P]laintiffs have failed to establish the necessary elements to prove a cause of action of a claim of negligence against GlobalLab and Dr. Freeman in that there has not been substantial evidence of any negligence on the part of GlobalLab and Dr. Freeman that would have been the proximate cause of plaintiffs' alleged damages.

(Doc. 149, p. 330). The Court denied GlobalLab's Rule 50(a) motion, subject to its ability to renew it after the entry of judgment under Rule 50(b).

The Rule 50(b) motion currently before the Court involves GlobalLab's contention that the jury's finding of liability should be vacated and judgment entered on GlobalLab's behalf as a matter of law "because Plaintiffs failed to prove that Defendants were negligent or that their actions proximately caused Plaintiffs' damages." (Doc. 144, p. 5). The Court finds, after careful consideration of the trial transcript and exhibits as well as the parties' briefing on the issues, that there was sufficient evidence of GlobalLab's negligence to support the jury's verdict.

In particular, there was evidence presented that: (1) the sole reason why both Plaintiffs were terminated from their jobs as substance abuse counselors in May of 2010 was that their employer received and relied upon a medically certified report from GlobalLab that verified both employees had tested positive for ecstasy use during a random drug screen; (2) Kara Moore, the former president of the board of directors for Plaintiffs' employer, the Washington/Madison County Drug Court Treatment Center, testified that she relied on the accuracy of GlobalLab's positive drug screen results, particularly in light of the fact that they were signed by a medical review officer; (3) Plaintiffs' direct supervisor, LouAnn Lehman, testified that she was surprised when she received Plaintiffs' positive drug test results and called Mike Sullivan, the Chief Executive Officer of GlobalLab, to confirm—in general, rather than with reference to the

Plaintiffs' tests specifically—the accuracy and reliability of those results; (4) Ryan Sullivan, GlobalLab's former operations manager, testified that he received the lab reports concerning Plaintiffs' drug screens and, within 48 hours, faxed a medical certification confirming that both Plaintiffs had tested positive for ecstasy; (5) the fax from GlobalLab was electronically signed by Defendant Dr. Tyler Freeman, indicating he had reviewed the test results, even though he had not; (6) Plaintiffs' office phone number was listed on the relevant intake forms associated with the urine samples submitted for drug testing, and evidence was presented that it was Plaintiffs' employer's routine practice to list the office phone number as the contact number on the intake forms, rather than the individual employees' home phone numbers; (7) Plaintiffs at the time of their termination were training to become licensed drug counselors and, as a result of their termination, lost credit for thousands of education/training hours they had accumulated toward certification in their two previous years of employment and also lost the opportunity to qualify to take the licensing examination; (8) Plaintiffs were investigated by the Arkansas Substance Abuse Certification Board as a result of the positive drug screen results that were reported by GlobalLab to Plaintiffs' employer; and (9) GlobalLab sent a letter to the State board admitting that both Plaintiffs' positive test results for ecstasy were erroneous and had been reported to their employer in error.

Considering the evidence detailed above, the Court finds that the facts before the jury were sufficient to allow it to decide the issue of liability in Plaintiffs' favor. Judgment as a matter of law may not be granted simply because the evidence "would allow reasonable jurors to differ as to the conclusions that could be drawn." *Roberson v. AFC Enterp., Inc.*, 602 F.3d 931, 933 (8th Cir. 2010). Instead, a Court may only vacate a

jury's verdict on liability if "there is a complete absence of facts to allow a jury to reach its conclusion." *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 770 (8th Cir. 2004). As sufficient facts support the negligence finding, the Rule 50(b) motion is denied.

### B. Rule 59(a) Motion for a New Trial or for Remittitur

Although the jury's liability determination is legally sufficient, the Court has carefully considered the record in this case and finds that the award of damages is not supported by fact or law. In closing argument, Plaintiffs' counsel outlined the evidence in support of each Plaintiff's economic damages for loss of wages and medical insurance benefits resulting from GlobalLab's negligence. Counsel then suggested that each Plaintiff was entitled to further damages for "emotional suffering, pain, mental anguish, those types of things," and encouraged the jury "that's a number that you all have to come up with." (Doc. 149, p. 357[3]). Specifically, counsel suggested that, for each Plaintiff, the jury should add an amount equal to "two to three times the amount" of past and future lost wages. *Id.*

When comparing Henderson's economic damages of $243,589.00 to the amount the jury actually awarded her—$775,000.00—it is evident that the jury added in an amount for mental anguish using a multiplier of three or more.[4] The same is true with respect to Jones' award: the difference between his economic damages of $256,329.00

---

[3] Doc. 149 is the trial transcript. Page references correspond to the page numbers on Doc. 149, and these page numbers differ somewhat from those found on the court reporter's transcript pages.

[4] $243,589.00 times three equals $730,767.00.

and the jury's award of $770,000.00 also indicates the application of a multiplier for mental anguish.[5]

The Court finds that counsel's summary calculation of Henderson's actual damages—absent any additional amount for mental anguish—is supported by the evidence. Henderson's lost wages from the time of her termination until January 1, 2011, at a rate of pay of $28,000.00 per year, was $16,331.00. Evidence was presented that Henderson was on track to receive a promotion and become a licensed drug counselor around January 1, 2011. As of that date, her salary would have increased to $40,000.00. Her counsel then calculated her lost wages from January 1, 2011 until the date of the jury's verdict at a rate of $40,000.00 per year, for a total of $153,318.00. Henderson lost medical insurance benefits for a period of time after her termination, causing her to incur replacement insurance costs of $1,140.00. Finally, her counsel asked the jury to award Henderson two years of future lost wages at a rate of $40,000.00 per year, reduced to present value, for a two-year total of $72,500.00. Assuming Henderson would have received the full amount of economic damages calculated during trial, the grand total of her compensatory damages—prior to factoring in damages for mental anguish—would have been $243,589.00.

As for Jones, his lost wages from the time of termination until January 1, 2011, at a rate of pay of $25,000.00 per year, were $14,518.00. Jones presented evidence that he, like Henderson, was on track to receive a promotion and become a licensed drug counselor earning $40,000.00 per year, beginning around January 1, 2011. Jones'

---

[5] $256,329.00 times three equals $768,987.00.

counsel then calculated his lost wages from January 1, 2011 until the date of the jury's verdict at a rate of $40,000.00 per year, for a total of $153,318.00. Jones also lost his medical insurance benefits when he was terminated. He subsequently incurred medical bills due to treatment for a number of preexisting conditions in the amount of $15,930.16. Finally, counsel added two years of future wage loss at a rate of $40,000.00 per year, reduced to present value, for a two-year total of $72,500.00. Assuming Jones would have received the full amount of economic damages argued by counsel, the grand total of his compensatory damages—prior to adding in damages for mental anguish—would have been $256,329.00.

GlobalLab makes several arguments in support of its Rule 59(a) motion, the first being that Plaintiffs failed to establish a prima facie case of negligence. This argument has already been rejected, *supra*. *See* section III.A. As to GlobalLab's argument that the jury improperly disregarded evidence relating to Plaintiffs' failure to mitigate damages, this is also rejected. Although there was evidence presented at trial that Plaintiffs were eligible for rehire at their former place of employment once they were officially cleared of all drug abuse allegations, there was also testimony that no open positions were available at that time. *See, e.g.*, trial testimony of Kara Moore, Doc. 149, p. 189.

The sole argument made by GlobalLab that is persuasive to the Court in considering the Rule 59(a) motion is that Plaintiffs failed to establish at trial that either of them suffered a preceding physical impact or injury to justify any award of mental anguish damages. GlobalLab, along with former defendant Concentra Laboratories, LLC ("Concentra"), briefed this very issue in the form of a Motion in Limine (Doc. 77)

prior to the first trial of this matter. In that Motion in Limine, GlobalLab argued that under Arkansas law, a plaintiff cannot recover for negligently inflicted mental anguish unless it is preceded by a physical impact or injury. *See Dowty v. Riggs*, 2010 Ark. 465, at *7 (2010) ("Arkansas does not recognize the tort of negligent infliction of emotional distress.")(citation omitted). In addition, GlobalLab argued that its notice of such damages was untimely and should therefore be excluded.

It appears that in the Order denying this Motion in Limine, *see* Doc. 118, the Court never addressed the legal issue of whether Plaintiffs' evidence of "physical" injuries would be legally sufficient to support an award of mental anguish damages. Plaintiffs' "physical" injuries were, at that time, represented to include nausea, stomach pain, sleeplessness, headaches, higher blood pressure, and tension—all of which were stress-related and had manifested after they lost their jobs. But the Court's ruling focused only on GlobalLab's alternative argument—whether Plaintiffs had disclosed to GlobalLab and Concentra the details of their alleged physical injuries sufficiently in advance of trial so as not to constitute unfair surprise. GlobalLab failed to seek—either prior to the introduction of such evidence, or as part of its Rule 50(a) motion—a more specific ruling on the legal issue of whether the type and nature of Plaintiffs' alleged physical injuries would be sufficient under Arkansas law to justify an award of damages for mental anguish. GlobalLab also failed to object to the Court's jury instruction on mental anguish damages.

Nevertheless, with the benefit of the complete trial transcript, the Court now concludes that the evidence introduced at trial does not, in fact, support an award for mental anguish for either Plaintiff. Negligent infliction of emotional distress is not a

recognized tort in Arkansas, and to obtain an award of mental anguish damages on a negligence claim, there must be evidence of a preceding physical injury *that led to* the mental anguish. As explained by the Supreme Court of Arkansas in the often-cited case of *M.B.M. Co, Inc. v. Counce*, a plaintiff's "right to recover damages for emotional distress depends upon the existence of a cause of action to recover these damages when distress is not merely 'parasitic' as an element of damages for physical injury." 268 Ark. 269, 273 (1980). Although there are instances in which a plaintiff may recover damages for mental anguish in the absence of a triggering physical injury, those cases are limited to "willful and wanton wrongs and those committed with the intention of causing mental distress," not to mere negligence. *Id.* at 274.[6]

The Arkansas Supreme Court further explained in *FMC Corp., Inc. v. Helton* that actual damages cannot, as a matter of course, also include damages for mental anguish, as Arkansas law requires that plaintiffs "prove that they suffered a physical injury *that led to* the mental anguish or that [defendants] willfully or wantonly committed wrongs with the intention of causing mental distress." 360 Ark. 465, 483 (2005) (emphasis added). In the case at bar, Plaintiffs' physical injuries were admittedly *a manifestation* of mental anguish or stress, and the injuries themselves did not lead to mental aguish.

Professor Howard W. Brill, in his treatise on damages under Arkansas law, succinctly explained the rule barring recovery for mental anguish in negligence cases as follows:

---

[6] Arkansas has recognized—and now refers to such causes of action—as the tort of outrage.

> This rule does not bar recovery for emotional distress provided an impact causes the anguish, but physical injuries and mental anguish not produced by physical impact are not recoverable. For example, a parent who sees her child injured through negligence and who suffers resulting emotional anguish, grief, and physical symptoms, such as medically treated depression or insomnia, is barred from any recovery against the tortfeasor. Mental suffering unaccompanied by physical injury is not an element of recoverable damages because it is generally viewed as too remote, speculative, and difficult to ascertain. Damages for emotional harm are considered parasitic damages in that recovery is allowed only if they are attached to the host of physical impact.

1 Howard W. Brill, *Arkansas Law of Damages* 33:12 (5th ed. 2014) (footnotes omitted).

Applying the reasoning above to the instant dispute, the physical injuries that Plaintiffs testified about at trial—headache, anxiety, sleeplessness, and the like—were caused by the mental anguish they experienced at the loss of their jobs. As such, these injuries are not considered "physical impact" injuries for purposes of determining whether mental anguish damages may be assessed. For these reasons, the jury should not have been permitted to consider an award of mental anguish damages, and allowing them to consider such was clear legal error.

It appears, therefore, that a new trial as to damages is warranted in order to correct a manifest injustice caused by this legal error. However, considering the fact that this case is now nearly four years old, and a jury has been convened not once, but twice, to hear these issues, the alternative option of ordering a remittitur—as opposed to a third trial—is appropriate because it provides the possibility of a resolution that could conserve judicial resources and reduce legal costs for the parties. The Eighth Circuit has approved the use of a remittitur as an alternative to a new trial, particularly when the case at issue has been the subject of lengthy litigation. *See United States v. 47.14 Acres of Land*, 674 F.2d 722, 728 (8th Cir. 1982).

Even though the amount of remittitur may not be capable of precise calculation, precision is not necessary, *id.* (citation omitted); instead, the Court, in its discretion, may "consider equities when deciding between remittur and a new trial." *Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1110 (8th Cir. 2014). The Court finds, as explained in detail above, that the maximum damages award that the jury reasonably could find for Henderson is $243,589.00, and the maximum award for Jones is $256,329.00. *Cf. Slatton v. Martin K. Eby Const. Co., Inc.*, 506 F.2d 505, 508-09 (8th Cir. 1974) (explaining that the standard of review for remittitur awards as applied by the Eighth Circuit involves considering "whether there was an abuse of discretion in ordering the remittitur" and "whether the remittitur was ordered for an amount less than the jury could reasonably find").

## IV. CONCLUSION

For the reasons explained herein, Defendants GlobalLab Solutions, Inc. and Tyler Freeman, MD's Motion for Judgment as a Matter of Law, New Trial, or Remittitur (Doc. 143) is **GRANTED IN PART AND DENIED IN PART**. The Rule 50(b) motion for judgment as a matter of law is **DENIED**; but the Court is inclined to grant the Rule 59(a) motion for a new trial as to the issue of damages only in order to correct a manifest error of law. Defendants have moved, in the alternative to a new trial, for remittitur of the amount of the damages award that is excessive as a matter of law. The alternative motion for remittitur is **GRANTED**. If, within 20 days after the issuance of this Memorandum Opinion and Order, either Plaintiff agrees to consent to a remittitur of the damage award, with the new award for Henderson set at $243,589.00 and the new award for Jones set at $256,329.00, the Court will vacate the judgment as to damages

for that particular Plaintiff and enter the consented-to award.  If either Plaintiff does not consent to remittitur, the Court will vacate the judgment as to damages with respect to that Plaintiff and order a new trial on damages.

**IT IS SO ORDERED** on this 26th day of August, 2015.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE